IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TYRON SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ADVOCATE AURORA HEALTH, INC., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff, TYRON SMITH, by and through his attorneys, Friedman Maguire & Carey, P.C., for his Complaint against Defendant, ADVOCATE AURORA HEALTH, INC., states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because they arise from the same set of operative facts upon which this Court's federal question jurisdiction is based.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because all of the events or omissions giving rise to Plaintiff's claims occurred within this district and because Defendant is located within this district.

## PARTIES

3. Plaintiff, TYRON SMITH ("Smith"), age 65, was an employee of Defendant, ADVOCATE AURORA HEALTH, INC. ("Advocate"). Smith is African American.

4. That at all times relevant, Smith qualified as a member of a protected class pursuant to the Age Discrimination Employment Act of 1967 and pursuant to the Civil Rights Act of 1964.

5. That at all times relevant, Advocate was a corporation employing more than 15 employees.

**FACTS COMMON TO ALL COUNTS**

6. Smith began working for Advocate in June of 2008 as a staff chaplain.

7. On January 22, 2017, Smith was promoted to the position of Senior Staff Chaplain.

8. During his employment with Advocate, Smith was awarded MVP recognition at Advocate Christ Hospital for his efforts in the Emergency Department.

9. Smith was also appointed as Ombudsman for his work across all demographics, and in particular, the LGBTQ community.

10. Smith was recognized by Kourtney Witten and Kerri Allen on at least four occasions for his outstanding job performance (Appreciate recognition on 10/18/19 ("Thank You"); Patient Safety Good Catch recognition on 10/18/19 ("Tyron raised an important safety issue related to changes in chaplain workflow and documenting Advanced Directives. This questioning attitude led to revisions in the work flow to ensure safe documentation for POAHCs"); additional Appreciate recognitions on 10/29/19 ("Your efforts are appreciated") and 11/12/19 ("Teamwork").

11. On November 22, 2019, Smith received a call from his supervisor, Kerri Allen ("Allen"), who asked him to report to human resources immediately.

12. That same day, Smith met with Allen in a conference room and Advocate employee, Francine Schaefer ("Schaefer"), participated via speakerphone.

13. Allen and Schaefer told Smith during the meeting that colleagues of his had reported that he had been spreading rumors about Allen having an affair with another Advocate employee.

14. Smith denied that he spread any rumors about Allen and asked for the names of the individuals who accused Smith of spreading the rumors.

15. Allen and Schaefer refused to provide Smith with the names of the individuals who allegedly reported him for spreading rumors.

16. Smith was given a directive not to discuss the matter with anyone, to which he complied.

17. Smith completed his workday without issue and returned to work the following Monday, November 25, 2019.

18. After Smith completed his workday on November 25, 2019 without incident, he received a telephone call that evening at home from Allen and Schaefer advising him that he was terminated.

19. Allen and Schaefer told Smith that the reason for his termination was that he had spoken to a colleague about the allegations against him. However, the Corrective Action Notice states that Smith was terminated for harassment. The Corrective Action Notice is attached hereto as Exhibit A.

20. Smith denied that he spoke to anyone about the allegations or the meeting he had with Allen and Schaefer on November 22, 2019.

21. On information and belief, Allen participated in or made the decision to terminate Smith, despite the fact that Smith was being terminated for allegedly spreading rumors about Allen having an affair with another Advocate employee. On information and belief, no investigation was done by Advocate prior to terminating Smith.

22. Advocate has a practice of offering employees who are over the age of 65 a "buy out" to retire.

23. Allen commented to Smith that Advocate wanted to bring in younger employees to save money, which is why "buy outs" were being offered to older employees.

24. On information and belief, Advocate hired an individual to replace Smith that is not African American and who is younger than Smith.

25. Prior to his termination, Smith was meeting his employer's expectations with regard to his work performance.

### COUNT I – VIOLATION OF AGE DISCRIMINATION EMPLOYMENT ACT OF 1967

1-25. Smith incorporates and realleges Paragraphs 1 through 25 above as Paragraph 1-25 of this Count I as if fully set forth herein.

26. Smith received a Notice of Right to Sue from the Illinois Department of Human Rights on January 4, 2021. A copy of the Notice is attached hereto as Exhibit B.

27. Advocate's actions toward Smith constitute material adverse employment actions that were motivated by Smith's age in violation of his rights afforded to him by the Age Discrimination in Employment Act ("ADEA").

28. In taking the actions described above, Advocate intentionally violated Smith's rights under the ADEA.

29. Advocate denied Smith equal terms, conditions, benefits and privileges of employment because of his age, including unwarranted scrutiny, creating a hostile, intimidating and offensive work environment and terminating his employment without cause.

30. As a result of Advocate's violations of the ADEA, Smith is entitled to declaratory and monetary relief to remedy and compensate him for the effects of Advocate's unlawful actions.

31. As a result of Advocate's violations of the ADEA, Smith suffered injury, including lost wages, loss of employment related benefits, mental and emotional distress and out-of-pocket

expenses.

32. Advocate's termination of Smith at age 64 reduces his ability to find other employment.

33. In violating the ADEA and discriminating against Smith on the basis of his age, while treating numerous others in a disproportionately favorable manner, Advocate acted with malice or reckless indifference to Smith's rights, entitling him to an award of liquidated damages.

WHEREFORE, Plaintiff, Tyron Smith, prays for a judgment in his favor and against Advocate and seeks the following relief:

A. A declaratory judgment against Advocate, finding that Advocate violated Smith's rights under the ADEA by denying and depriving him of equal employment opportunities on the basis of age;

B. That Smith be made whole by awarding his equitable monetary relief in the form of back pay and front pay and also award liquidated damages for Advocate's violations of the ADEA;

C. That Smith be awarded his attorneys' fees, costs and nontaxable expenses;

D. Pre-judgment and post-judgment interest on all monetary amounts awarded in this action, as provided by law; and

E. Such other and further relief as this Court deems just and proper.

## COUNT II – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT BASED ON RACE

1-25. Smith incorporates and realleges Paragraphs 1 through 25 above as Paragraph 1-25 of this Count II as if fully set forth herein.

26. Smith received a Notice of Right to Sue from the Illinois Department of Human Rights on January 4, 2021. A copy of the Notice is attached hereto as <u>Exhibit B</u>.

27. Advocate's termination of Smith's employment was a materially adverse employment action that was motivated by Smith's race in violation of rights secured to him by the

Civil Rights Act, Title VII.

28. In taking the actions described above, Advocate intentionally violated Smith's rights under Title VII.

29. Advocate denied Smith equal terms, conditions, benefits and privileges of employment because of his race.

30. As a result of Advocate's violations of Title VII, Smith is entitled to declaratory and monetary relief to remedy and compensate him for the effects of Advocate's unlawful actions.

31. As a result of Advocate's violations of Title VII, Smith suffered injury, including lost wages, loss of employment related benefits, mental and emotional distress and out-of-pocket expenses.

32. In violating Title VII and discriminating against Smith on the basis of his race, while treating numerous others in a disproportionately favorable manner, Advocate acted with malice or reckless indifference to Smith's rights, entitling him to an award of liquidated damages.

WHEREFORE, Plaintiff, Tyron Smith, prays for judgment in his favor and against Advocate and seeks the following relief:

A. A declaratory judgment against Advocate, finding that Advocate violated Smith's rights under Title VII by denying and depriving him of equal employment opportunities on the basis of his race;

B. That Smith be made whole by awarding him equitable monetary relief in the form of back pay and front pay and also award liquidated damages for Advocate's violations of Title VII;

C. That Smith be awarded his attorneys' fees, costs and nontaxable expenses;

D. Pre-judgment and post-judgment interest on all monetary amounts awarded in this action, as provided by law; and

E. Such other and further relief as this Court deems just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY.

                                         Respectfully submitted:

                                         TYRON SMITH

                              By:   /s/ Michelle L. Carey
                                         One of his attorneys

Michelle L. Carey
Friedman Maguire & Carey, P.C.
150 South Wacker Drive, Suite 2600
Chicago, Illinois 60606
(312) 857-4000
mcarey@fmpclaw.com

7